## Commonwealth v. Robb

*Mary MacNeil Killinger, assistant district attorney,* for the commonwealth.

*Frank J. Marcone,* for defendant.

SUBERS, *J.,* November 14, 1988—Defendant, Donald Leroy Robb, was charged with using a credit card for the purpose of obtaining property with knowledge that the card is stolen, forged or fictitious.[1] Defendant waived his right to a jury trial. On December 16, 1987, defendant was tried before the undersigned sitting without a jury pursuant to a stipulation of facts submitted by the commonwealth and defendant. Defendant demurred, presenting only one question for this court's consideration: Whether the credit card defendant used was "fictitious" within the meaning of section 4106 of the Crimes Code because it was based on false information knowingly supplied by defendant on the credit application.

We took the matter under advisement. On January 27, 1988 this court determined that the card was "fictitious" within the meaning of section 4106 and found defendant guilty of violating section 4106(a)(1)(i).

Following argument, defendant's motion in arrest of judgment was denied on June 16, 1988. On August 15, 1988, defendant was sentenced to undergo imprisonment for not less than four nor more than 23 months, to three years' probation and to pay a fine of $500 and restitution in the amount of $6,418.64. Defendant now appeals.

## FACTS

On September 10, 1986, defendant applied for an American Express card in the name of Donald Robb. Defendant gave his date of birth as March 22,

---

1. 18 Pa.C.S. §4106(a)(1)(i).

1958, and his Social Security number as 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. He listed his home address as 1301 Old Gulph Road, Bryn Mawr, Pa., and stated that he was the owner of this property and had resided there for eight years. Defendant indicated that 1301 Old Gulph Road would be the billing address for his American Express card, if granted. Defendant listed Chemclear Inc. located at 992 Old Eagle Road in Wayne, Pa., as his place of employment and stated that he had been employed there for eight years with a current salary of $33,000 per year. As a result of this application, the American Express Company issued card number 3732 1230 4171 002 to defendant. Using this card, defendant made purchases totalling $6,418.64. Defendant failed to make payment on the past due balance of $6,418.64 and the account was subsequently closed by the American Express Company in January 1987.

Investigation later revealed, and defendant stipulated to the fact, that his true date of birth is March 22, 1959, and that his Social Security number is 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, not the number listed on the application. Defendant has never had claim nor title to 1301 Old Gulph Road in Bryn Mawr although he was renting it at the time of the application until shortly before Thanksgiving of 1986. Finally, defendant has never been employed by Chemclear Inc. Defendant agrees that if the American Express Company had known that the information listed on the application was false it would not have issued a card to defendant.

## ISSUE

Whether the making of false statements on a credit card application in an effort to obtain credit renders the card issued "fictitious" within the

meaning of section 4106 of the Crimes Code.[2]

## DISCUSSION

The sole question presented in this case is the definition of the term "fictitious" as used in section 4106(a)(1)(i) of the Crimes Code. That section reads:

"(a) *Offense defined* — A person commits an offense if he:

"(1) uses a credit card for the purpose of obtaining property or services with knowledge that:

"(i) the card is stolen, forged or fictitious. . . ."

The definitional section of this provision does not explain what the legislature means when it refers to a "fictitious" credit card. Likewise, the legislative history reveals no remarks on the passage of the 1974 amendment which added the word "fictitious" to section 4106(a)(1)(i). The only comment made with respect to section 4106 is the Official Comment of 1972 which states:

"This section is derived from section 224.6 of the Model Penal Code.

"Section 898 of the Penal Code of 1939 (18 P.S. §4898) *is a comprehensive section dealing with fraudulent use of credit cards.* This section simplifies but makes no substantial change in existing law." (emphasis supplied)

This comment aids us in interpreting section 4106 only to the extent that it informs us that section 4106 and its predecessor, section 898 of the Penal Code of 1939, are intended as comprehensive sections prohibiting fraudulent use of credit cards.

Defendant urges us to define a "fictitious" credit card as a "counterfeit card, one that has not been is-

---

2. 18 Pa.C.S. §101 et seq.

sued by the issuer." Since the card used by defendant was issued by American Express in defendant's name and was valid at the time of use, defendant argues it can not be fictitious in violation of section 4106(a)(1)(i) because it was not counterfeit. We disagree.

In interpreting a statute, the legislature is "presumed to have intended to avoid mere surplusage in words, sentences, and provisions of its laws." *Commonwealth v. Saul*, 346 Pa. Super. 155, 160, 499 A.2d 358, 360 (1985), citing *Habecker v. Nationwide Insurance Company*, 299 Pa. Super. 463, 445 A.2d 1222 (1982). Accordingly, courts must construe a statute so as to give effect to each word, if possible. We are particularly reluctant to read "fictitious" as mere surplusage in view of the fact that it was added to section 4106 by the 1974 amendment. Prior thereto, section 4106 read, in part:

"(a) *Offense defined.* — A person commits an offense if he uses a credit card for the purpose of obtaining property or services with knowledge that:

"(1) the card is stolen or forged;

"(2) the card has been revoked or canceled; or

"(3) for any other reason his use of the card is unauthorized by the issuer."

If we were to adopt defendant's definition of "fictitious" we would be interpreting that term to be mere surplusage. Defendant submits that a "fictitious" card means a counterfeit card. However, a forged card is specifically mentioned in section 4106. Forgery is commonly referred to as counterfeiting and is defined as the act of making a writing, including a credit card, with the intent to defraud so that it purports to be the act of another who did not

authorize that act.[3] Likewise, Black's Law Dictionary defines counterfeit as "to forge; to copy or imitate, without authority or right, and with a view to deceive or defraud, by passing the copy or thing forged for that which is original or genuine. . . ." Black's Law Dictionary 315 (5th Ed. 1979).

The question of the definition of "fictitious" then remains to be answered. Where a term is not defined in the Crimes Code, we construe it according to its common, ordinary and approved usage. See *Commonwealth v. Westcott*, 362 Pa.Super. 176, 523 A.2d 1140 (1987). The only helpful definition available is found in Black's Law Dictionary. In Black's the definition of "fictitious" reads:

"Founded on a fiction; having the character of a fiction; pretended; counterfeit. Feigned, imaginary, not real, false, not genuine, nonexistent. Arbitrarily invented and set up to accomplish an ulterior object."

Given the preceding discussion, we decline to read "fictitious" as mere surplusage by interpreting it to mean "counterfeit." However, in the above definition of "fictitious" we find guidance in the first definition given. "Founded on a fiction" describes the credit card used by defendant. The credit card issued by American Express was founded on the fiction of the false information provided by defendant in his application. If it were not for this false information, no card would have been issued. Knowing that the card he was using would not exist but for his misrepresentations, defendant proceeded to use the card and thereby violated section 4106(a)(1)(i). For purposes of section 4106, defendant's card was fictitious and his use of that card was prohibited.

---

3. 18 Pa.C.S. §4107.

Defendant argued at trial that section 4107(a)(1)(6), not section 4106, was the proper section under which this prosecution should have brought. Title 18 Pa.C.S. §4107(a)(1)(6) reads:

"§4107. Deceptive business practices —

"(a) *Offense defined* — A person commits a misdemeanor of the second degree if, *in the course of business,* he:

. . .

"(6) makes a false or misleading written statement for the purpose of obtaining property or credit . . ." (emphasis supplied)

The critical phrase in section 4107 is "in the course of business." Section 4107 has been limited in application to persons in business. See *Commonwealth v. Dugan,* 335 Pa. Super. 82, 483 A.2d 965 (1984); *Commonwealth v. Snyder,* 335 Pa. Super. 19, 483 A.2d 933 (1984): *Commonwealth v. J.P. Mascaro and Sons,* 266 Pa. Super. 8, 402 A.2d 1050 (1979). Despite the fact that section 4107 specifically addressed the making of a false written statement for the purpose of obtaining credit, we can not overlook the fact that this section requires the actor to be acting in the course of business. Section 4107 is titled "Deceptive Business Practices." Conversely, section 4106 is a comprehensive statute prohibiting fraudulent use of credit cards and is simply titled "Credit Cards."

Since the general assembly failed to define "fictitious" as used in section 4106, we were forced to give it meaning. In the case at bar, we considered the 1972 official comment as a statement by the legislature to redress credit card fraud. Taking this into consideration, in conjunction with general principles of statutory construction, we conclude that the legislature intended to prohibit conduct such as de-

fendant's by use of the word "fictitious" in section 4106.

## CONCLUSION

Based upon the foregoing analysis, our denial of defendant's motion in arrest of judgment was proper and should be affirmed.